William F. RIORDAN, II, an individual, Plaintiff,

v.

BABCOCK & WILCOX COMPANY, a corporation and subsidiary of McDermott Inc., a corporation and Alpha Press Company Incorporated, a corporation, Defendants.

Civ. A. No. 87–175 ERIE.

United States District Court,
W.D. Pennsylvania.

Feb. 10, 1989.

---

Joseph J. Hinchcliffe, Tarasi & Johnson, Pittsburgh, Pa., for Riordan.

Robert C. Whitley, Doylestown, Pa., for Alpha Press Co.

William M. Wycoff, Kevin C. Abbott, Thorp Reed & Armstrong, Pittsburgh, Pa., for Babcock & Wilcox Co.

OPINION

GERALD J. WEBER, Senior District Judge.

This is a products liability action in which plaintiff seeks to recover for injuries sustained on September 4, 1985, when his hand was crushed in a punch press machine manufactured by Defendant Alpha Press Company. Alpha Press, a New Jersey corporation, has moved to dismiss the complaint against it for lack of personal jurisdiction.

I.

When lack of jurisdiction is raised, the burden of proof falls upon the party asserting jurisdiction to come forward with facts to support his claim. Accordingly, plaintiff has provided us with four affidavits. Two of the affidavits are of plaintiff's counsel. The first simply attaches incorporation documents of Alpha Press, proffered to show that the documents were executed in Pennsylvania in 1965, and that the majority interests of the corporation were taken by Pennsylvania residents. Counsel's second affidavit attaches exhibits which establishes that Alpha Press was listed in the 1985 edition of McRae's Industrial Directory—New Jersey, the 1987 edition of the Thomas Register of American Manufacturers and Thomas Register Catalog File, and finally the January 1980 Master Directory of Precision Metal. According to the affidavit, McRae's and Thomas are distributed nationally to a variety of consumers. Also, according to the affidavit, counsel was informed by spokespersons at McRae's and Thomas that the information listed in each is supplied by the companies listed.

The third affidavit is by Daniel Dunfee and relates the results of his inquiries concerning presses manufactured by Alpha Press and sold directly to Pennsylvania companies. In November 1987 he was able to locate approximately fifteen presses at eight locations in Pennsylvania. Representatives at four of these locations stated either that the machines were serviced by Alpha Press or that servicing was available. A representative at one of the locations stated that spare parts could be obtained from Alpha Press. Finally, one of

the representatives stated that personnel of Alpha Press had recently rebuilt their press.

The final affidavit is by John Danko, who is a vice-president of plaintiff's employer. It simply states that items were purchased directly from Alpha Press for the maintenance of an Alpha Press machine. Documents evidencing these sales and shipments to Saegertown, Pennsylvania, are attached.

In response to plaintiff's affidavit, Alpha Press has submitted two of its own by its president, Adolf Weiss. The first states, inter alia, that: 1) all presses, spare parts, and other items sold by Alpha Press are shipped f.o.b. Alpha, New Jersey; 2) all sales by Alpha Press are done by "in house" personnel who are located at Alpha, New Jersey; and 3) the press which injured plaintiff was sold to an anticipated "end user" in Hendersonville, North Carolina.

Weiss' second affidavit states, inter alia, that 1) Alpha Press did not provide the information for or pay for any listing in either McRae's or Thomas; 2) Alpha Press does not solicit the servicing of machinery, and does not sell service contracts nor does it have any service contracts; and 3) that Alpha Press' servicing is done "strictly [on Alpha Press Products] on a call by call basis and if it is requested or necessary that service be done at a location other than Alpha, New Jersey, the company or entity requesting the service must pay for and assume the obligations associated with any travel to other places."

## II.

Plaintiff alleges that we may assert personal jurisdiction over Alpha Press on the basis of the Pennsylvania long arm statute. 42 Pa.C.S.A. § 5322(b). That section authorizes exercise of personal jurisdiction "to the fullest extent allowed under the Constitution of the United States ... based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States."

"The Constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum state.'" *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 109, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987), quoting, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Critical to this due process analysis is a "forseeability that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

> When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. [235,] 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others.

*World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

The uncontroverted evidence herein shows that Alpha Press holds itself out as a manufacturer of hydraulic presses. The

listings in McRae's Industrial Directory, and the Thomas Register are some evidence of this. We find them, however, to be of little if any evidentiary significance to the ultimate question with which we are faced, especially in light of defendant's denial that it even supplied the information for the listings. We also place little if any significance upon the fact that the incorporation documents were executed in Pennsylvania and that the majority interests of the corporation were taken by Pennsylvania residents. We find plaintiff's reliance on *Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765 (3d Cir.1984) in this regard to be greatly misplaced. In *Rees*, the cause of action arose out of preincorporation acts. Here there is no relation alleged between any preincorporation acts and the cause of action.

What we do find to be of great significance herein, is the direct sales of machinery and other items to Pennsylvania customers, as well as the availability of servicing to Pennsylvania customers. While it is uncontroverted that the machine which injured plaintiff was not originally sold directly to a customer in Pennsylvania but rather to a customer in North Carolina; it is clear that Alpha Press did make several other direct sales to Pennsylvania customers. Where as here, a clear intent and practice of directly marketing a product in the forum state is shown, we find it irrelevant whether the specific item causing the injury would be expected to find its way into the forum state. As long as a manufacturer directly markets its product in the forum state, the possibility of a lawsuit cannot come as a surprise. Alpha Press has benefitted economically from the sale of presses in Pennsylvania, and indirectly benefits from Pennsylvania laws that regulate and facilitate commercial activity. These benefits accrue from the marketing of the product, as a whole in Pennsylvania, and not necessarily from the specific press in question. We, therefore, hold that Alpha Press has purposefully availed itself of the privilege of conducting activities within Pennsylvania, and that this cause of action arises from these forum related activities.

### III.

Even where minimum contacts are found, "minimum requirements inherent in the concept of 'fair play and substantial justice'" may defeat the reasonableness of jurisdiction. *Burger King*, 471 U.S. at 477–478, 105 S.Ct. at 2185.

[T]he reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest, in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal*, 480 U.S. at 113, 107 S.Ct. at 1033, quoting *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.

The burden on the defendant herein is minimal in comparison to the interests of plaintiff who is a Pennsylvania citizen and the State of Pennsylvania in protecting its citizens from defective products. In addition, the interest of the "several states" will be best served by the resolution of the claims against all defendants in one forum. We therefore find that an exercise of jurisdiction herein, is consistent with fair play and substantial justice. Compare *Asahi Metal*, 480 U.S. at 113–116, 107 S.Ct. at 1033–1035.

### IV.

Having found that the facts of this case establish minimum contacts such that the exercise of personal jurisdiction is consistent with fair play and justice, Alpha Press' Motion to Dismiss is Denied.

### ORDER

AND NOW, this 10th day of February, 1989, in accordance with the accompanying Opinion, it is ORDERED that Defendant Alpha Press' Motion to Dismiss is DENIED.

It Is Further ORDERED that Defendant Babcock & Wilcox's Motion to Compel

Plaintiff to Respond to Second Set of Interrogatories is GRANTED and Plaintiff shall file its answers within 20 days of this Order. Defendant Babcock & Wilcox's request for expenses, including attorney's fees, is DENIED.